
JMB/SRD 2024R00113

USDC - BALTIMORE
'26 JUN 10 PM3:03

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CRIMINAL NO.** GLR-26-191 |
| | * | |
| **ANTHONY TERRELL** | * | **(Conspiracy to Unlawfully Produce** |
| **ALEXANDER** | * | **and Transfer Identification** |
| | * | **Documents, 18 U.S.C. § 1028(a)(1),** |
| **Defendant.** | * | **(a)(2), (a)(6), (f); Wire Fraud, 18** |
| | * | **U.S.C. § 1343; Forfeiture, 18 U.S.C.** |
| | * | **§§ 981(a)(1)(C), 982(a)(2), 21 U.S.C.** |
| | * | **§ 853(p), 28 U.S.C. § 2461(c))** |
| | * | |
| | * | |

******

## INFORMATION

### COUNT ONE
**(Conspiracy To Unlawfully Produce and Transfer Identification Documents)**

The United States Attorney for the District of Maryland charges that:

### INTRODUCTION

At times relevant to this Information:

1.      Defendant **ANTHONY TERRELL ALEXANDER ("ALEXANDER")** was a resident of Baltimore, Maryland.

2.      On or about April 25, 2018, **ALEXANDER** filed Articles of Organization in Maryland for His N Her Swag LLC.

3.      In or about October 2021, His N Her Swag LLC was forfeited, and in or about February 2022, it was reinstated.

4.      **ALEXANDER** opened three bank accounts in the name of His N Her Swag LLC: two in or about July 2020, and one in or about September 2022.

## THE CONSPIRACY

5.    Beginning in at least in or about January 2022 and continuing at least until in or about April 2024, in the District of Maryland and elsewhere,

**ANTHONY TERRELL ALEXANDER,**

the defendant herein, conspired and agreed with Co-Conspirator 1, and with others known and unknown, to knowingly and without lawful authority, produce and transfer, and attempt to produce and transfer, identification documents, authentication features, and false identification documents, to wit, digital social security cards that were and appeared to have been issued by and under the authority of the United States, in and affecting interstate commerce, in violation of 18 U.S.C. § 1028(a)(1), (a)(2), and (a)(6).

## MANNER AND MEANS

6.    It was part of the conspiracy that **ALEXANDER** agreed with others, including Co-Conspirator 1, to produce fake digital social security cards.

7.    It was part of the conspiracy that **ALEXANDER** maintained and used the email addresses HisNHerSwag@gmail.com and quickdocdepot@gmail.com.

8.    It was further part of the conspiracy that **ALEXANDER** received requests from individuals across the United States to prepare false and fraudulent identification and other documents, to include social security cards, bank statements, paystubs, and tax forms.

9.    It was further part of the conspiracy that **ALEXANDER** produced and transferred, and attempted to produce and transfer, identification documents, authentication features, and false identification documents via email.

10.   It was further part of the conspiracy that **ALEXANDER** obtained money and things of value for producing and transferring, and attempting to produce and transfer, identification documents, authentication features, and false identification documents.

11.   It was further part of the conspiracy that **ALEXANDER** used online payment companies such as CashApp, Zelle, ApplePay, Venmo, and PayPal to receive money.

12.   It was further part of the conspiracy that **ALEXANDER** concealed and sought to conceal his involvement in false identification documents.

13.   It was further part of the conspiracy that **ALEXANDER** instructed his customers to leave the transaction description blank when transferring funds to **ALEXANDER** through online payment companies.

14.   It was further part of the conspiracy that on or about July 11, 2022, September 30, 2022, December 15, 2022, December 29, 2022, January 18, 2023, and November 11, 2023, **ALEXANDER** produced and transferred false and fraudulent digital social security cards for customer Co-Conspirator 1.

15.   It was further part of the conspiracy that from in or about January 2022 until in or about April 2024, **ALEXANDER** produced and transferred more than one hundred fraudulent digital social security cards.

18 U.S.C. § 1028(a)(1), (a)(2), (a)(6), (f)

## COUNT TWO
### (Wire Fraud)

The United States Attorney for the District of Maryland further charges that:

1.     Paragraphs 1 through 4 of Count One are incorporated and realleged by reference.

2.     The United States Small Business Administration ("SBA") was a federal government agency.

3.     **ALEXANDER** maintained three business accounts at Bank of America, a federally insured financial institution as defined by 18 U.S.C. § 20, with account numbers ending in 3663 ("BOA 3663"), 4901 ("BOA 4901"), and 8250 ("BOA 8250"). These bank accounts were registered to His N Her Swag LLC.

4.     Customers Bank was a federally insured financial institution, as defined by 18 U.S.C. § 20, headquartered in Malvern, Pennsylvania. Customers Bank was a United States Small Business Administration ("SBA") Preferred Small Business Lender and participated as a lender in the Paycheck Protection Program ("PPP").

### The Paycheck Protection Program

5.     The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

6.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application

4

required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

7. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia / Oregon (Virginia – PPP Round 1 or 2 or Oregon if submitted after 1/11/2021 in Round 3). Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

8. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

9. The following businesses were third-party participating lenders in the PPP program: Wells Fargo Bank (a financial institution under 18 U.S.C. § 20), BSD Capital, Itria Ventures LLC, Paypal, Inc., Bluevine, Inc., Kabbage, Inc., Ondeck Capital, Inc., Credibly, and Funding Circle (collectively, the PPP lenders).

### The COVID-19 Economic Disaster Injury Loan Program

10. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program—the Economic Injury Disaster Loan ("EIDL")—to provide for

loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sale or profits, or for the expansion of a business.

11. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster (January 31 2020), the cost of goods sold, and information as to any criminal history of the business owner. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentation to the SBA, or any misapplication of the loan proceeds may result in sanctions, including criminal penalties.

12. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

### THE SCHEME TO DEFRAUD

13. Beginning in or about June 2020 and continuing through in or about February 2022, in the District of Maryland, and elsewhere,

### ANTHONY TERRELL ALEXANDER,

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice

to defraud the SBA and PPP lenders, to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## THE OBJECT OF THE SCHEME TO DEFRAUD

14.    It was the object of the scheme to defraud for **ALEXANDER** to unjustly enrich himself by unlawfully obtaining PPP and EIDL benefits though materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

15.    **ALEXANDER** created and caused to be created materially false, fraudulent, and fabricated documents to submit in support of his materially fraudulent PPP and EIDL applications, in the name of His N Her Swag LLC.

16.    **ALEXANDER** maintained and used the email addresses HisNHerSwag@gmail.com and quickdocdepot@gmail.com.

17.    **ALEXANDER** submitted and caused to be submitted, by interstate wire communications, materially false, fraudulent, and fabricated documents to the PPP lenders and the SBA to obtain PPP and EIDL benefits for the His N Her Swag LLC.

18.    **ALEXANDER** had no revenue and income from the businesses claimed on the PPP and EIDL applications that he caused to be submitted on behalf of His N Her Swag LLC.

19.    **ALEXANDER** submitted and caused to be submitted, by interstate wire communications, materially false, fraudulent, and fabricated documents to the PPP lenders and the

SBA to obtain benefits for himself and for His N Her Swag LLC, thereby resulting in interstate wire communications that ended in Maryland.

20. **ALEXANDER** caused the issuance of PPP and EIDL benefits, which were deposited into a bank account **ALEXANDER** designated, BOA 3663, thereby resulting in interstate wire communications that ended in Maryland.

21. It was further part of the scheme to defraud that **ALEXANDER** unjustly enriched himself by obtaining more than $100,000 through materially false and fraudulent pretenses, representations, and promises.

## THE CHARGE

22. On or about June 16, 2020, in the District of Maryland and elsewhere,

## ANTHONY ALEXANDER,

the defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, to wit, **ALEXANDER** caused the transmission of an application for $75,000 in EIDL loan funds for HIS N HER SWAG LLC, which resulted in an interstate wire from Maryland to a location outside of Maryland.

18 U.S.C. § 1343

## FORFEITURE

The United States Attorney for the District of Maryland further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461(c), in the event of the defendants' conviction under Counts One through Two of the Information.

### Identification Document Forfeiture

2.      Upon conviction of the offense alleged in Count One of this Information, the defendant,

### ANTHONY TERRELL ALEXANDER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any conveyance; and any property real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense or that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

### Wire Fraud Forfeiture

3.      Upon conviction of the offense alleged in Count Two of this Information, the defendant,

### ANTHONY TERRELL ALEXANDER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

### Substitute Assets

4.      If any of the above-described forfeitable property, as a result of any act or omission

of the defendant:

a. cannot be located upon the exercise of due diligence

b. has been transferred, sold to, or deposited with a third party

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above.

18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Kelly O. Hayes /JMB

Kelly O. Hayes
United States Attorney